UNITED STATES *v.* HAYS, *alias* McELFRESH, and others.

*(Circuit Court, W. D. Missouri.* May Term, 1884.)

1. PENSIONS—SECOND MARRIAGE—FIRST HUSBAND LIVING.
    A second marriage by a deserted wife who imagines her first husband dead, and her continuing to live with the other party to such marriage after discovering her husband to be alive, precludes her from claiming a pension, such husband having meantime entered and died in the service of the United States.

2. MARRIAGE—LEGAL INTENT—PRESUMPTION FROM CONTINUED INTERCOURSE.
    The presumption of the legal intent, with which parties innocently entered into on marriage, continues after the discovery of a prior husband of the woman, still alive; and their continuing living together and holding themselves out to the world as husband and wife constitute a relation to which the law attaches all the legal rights, obligations, and disqualifications which flow from a marriage entered into according to the forms of law.

3. SAME—LAW OF THE PLACE—ACT OF CONGRESS OF 1882.
    The act of congress of 1882 provides that, in determining the fact of marriage, the law of the place controls

At Law.

*Mr. Warner,* U. S. Dist. Atty., for the United States.

*Waters & Wyn,* for defendants.

KREKEL, J. The United States brings this suit to recover of defendants the sum of $1,887.06 paid to Lucinda Hays, as widow of Milton Hays, on account of pension moneys. The testimony in the case tends to show that Lucinda Hays, in 1840, was married in the state of Illinois, to Milton Hays; that after said marriage they lived together as husband and wife until 1859, when Hays abandoned his family.

Mrs. Hays in the following year came to Grundy county, Missouri, and some time during 1860, under the impression that her husband had died, married Absolom McElfresh. About two years after this marriage, in 1862, Hays not being dead, as supposed, appeared at the residence of McElfresh and wife, in Missouri, and caused them some annoyance, but finally went off and took up with a woman in Iowa. In order to avoid a prosecution for this illegal conduct, he joined the federal army in March, 1864, and died in the service in June of the same year. Mr. and Mrs. McElfresh, after the appearance of Hays at their home in 1862, continued to live together as man and wife until 1865, when they separated. In 1879, Mrs. McElfresh, claiming to be the widow of Milton Hays, applied for a pension for herself and two minor children, alleging and proving that she was the widow of Milton Hays, and had not married again since Hays' death. A pension certificate was issued to her on the sixteenth of December, 1881. This certificate was assigned by her to her daughter Mrs. Dyer, and by her to the defendant bank, who collected the money, and now holds it under a notice of claim by the United States. The question thereupon arises: Was Mrs. McElfresh the widow of Milton Hays, and as such entitled to a pension? It is claimed for Mrs. Hays that her marriage with McElfresh was illegal and void, the statute of Missouri declaring it so, because Mrs. Hays had a husband living at the time. There can be no question of the illegality of the marriage for the reason stated. The question still remains, however, what was the *status* of Mrs. McElfresh after the death of Mr. Hays? The testimony clearly thows that after the appearance of Hays in 1862, McElfresh and Mrs. Hays continued to live together as husband and wife the same as they had done before Hays' appearance in 1862, and continued so to live up to 1865, when they separated. There is no proof that any new or different relation was entered into after the appearance of Mr. Hays; on the contrary, it has been stipulated between the parties litigant "that no new or different arrangement or marriage was entered into between them, but that their cohabitation and reputation continued the same as before." Upon this it is argued that the first relation between McElfresh and Mrs. Hays, being illegal, and no new relation having been entered into, the relation remained illegal, as it was from the first. It seems to us that this is an erroneous view. The original intention of McElfresh and Mrs. Hays was not to commit an illegal act by their marriage, but, on the contrary, they attempted to conform to the law. This must be borne in mind in order to determine the *status* of the parties. Their intention being a legal one at the time of entering into the marriage, the presumption of this intent continues, even after they know that Hays was alive, though after that time their relation as husband and wife became to them a known illegal relation. McElfresh and Mrs. Hays being at the time of the death of Hays found in the relation of husband and wife, the presumption of the legal in-

tent with which they entered into the marriage continued, and their continuing living together as husband and wife, and holding themselves out to the world as such, constitutes a relation to which the law attaches all the legal rights, obligations, and disqualifications which flow from a marriage entered into according to the forms of law. *Holabird* v. *Ins. Co.* 2 Dill. 167; *Dyer* v. *Brannock*, 66 Mo. 401. The act of congress of 1882 provides that, in determining the fact of marriage, the law of the place controls.

The foregoing view negatives the idea that any new or different arrangement between McElfresh and Mrs. Hays became necessary, after the death of Hays, to remove the incipient illegality of their marriage. We assume it to be true, as stipulated, that no new or different arrangements regarding the marriage were made between the parties, and that they continued living together as man and wife. Their so continuing to live was an ever-recurring affirmance of the good faith of the relation into which they had entered in the beginning. The intent with which relations such as are here spoken of are entered into is all important. As to Mrs. McElfresh's own views regarding her widowhood, it may be remarked that she did not apply for the pension until 1879, 14 years after the death of her husband, and that after she did apply she bought and conveyed property in the name of Lucinda McElfresh, the name by which she was known where she resided.

The conclusions arrived at make it unnecessary to determine the correctness of the ruling of the pension department, by which widows who lived in open and notorious adultery were denied pensions. Congress, in the act of the seventh of August, 1882, seems not only to have affirmed this ruling, but to have gone beyond it by enacting "that the open and notorious adulterous cohabitation of a widow who is a pensioner, shall operate to determine her pension from the commencement of such cohabitation."

The judgment of the court is in favor of the United States.

BREWER, J., concurs.